176 So.2d 81 (1965)
Ralph N. WALTER, as Tax Assessor for Duval County, Florida, Clyde H. Simpson, as Tax Collector for Duval County, Florida, Julian Warren, T.K. Stokes, Jr., Bob Harris, Lem Merrett, Fletcher Morgan, as members of the Board of County Commissioners of Duval County, Florida, and Ray E. Green, as Comptroller for the State of Florida, Appellants,
v.
Charles G. SCHULER, Joseph F. Lowe, and the Jacksonville Investment Company, a corporation, on their own behalf and on behalf of all other taxpayers similarly situated, Appellees.
No. 34039.
Supreme Court of Florida.
May 21, 1965.
Rehearings Denied June 28, 1965.
*82 Wm. Joe Sears, Jr., and Rogers, Towers, Bailey, Jones & Gay, Taylor Jones and Robert S. Smith, Jacksonville, for Ralph N. Walter, as Tax Assessor.
Stallings & Marr, Jacksonville, for Clyde H. Simpson, as Tax Collector.
Earl Faircloth, Atty. Gen., Fred M. Burns, Asst. Atty. Gen., and Charles D. McClure, Tallahassee, for Ray E. Green, Comptroller of the State of Florida.
William G. O'Neill, Ocala, Franklin Reinstine, Francis P. Conroy, II, George Stelljes, Jr., and Marks, Gray, Yates, Conroy & Gibbs, Jacksonville, for appellees.
Paul E. Raymond, of Raymond, Wilson, Karl & Conway, Daytona Beach, J.W. Elkins, of Adams & Elkins, Naples, Thomas T. Cobb of Black, Cobb, Cole & Crotty, Daytona Beach, E.B. Larkin, of Larkin, Larkin & Goodson, Dade City, and Wallace Dunn, Ocala, as amicus curiae.
THOMAS, Justice.
From all accounts the tax roll of Duval County for 1964 is a mess.
It seems gradually to have become so since the one in 1941, which formed the basis for the rolls of succeeding years, until in 1964 it reflected valuations approximating 40 per cent. of taxable value, although the Constitution all the while had commanded a distribution of the tax burden on the basis of "just valuation." And the legislature in 1941 by Chapter 20722 had required that property be assessed at "its full cash value."
We are confronted with many and varied expressions relative to the means of fixing the value of property for purposes of taxation. It seems fitting, at the outset, to *83 quote with emphasis the provisions of the Constitution on the subject for, after all, this is the criterion to which any decision in the present litigation must be anchored. The language is simple; the amount shall be "just valuation" which for the immediate purpose we will call "X". (Italics supplied.) The confusion we are about to attack grew out of attempts to apply a definition of "X". The 1941 Act appears not to have been changed in any manner relevant to the prime point in this litigation, in respect of the figure on which taxes should be computed until the passage in 1963 of Chapter 63-250, and there in Sec. 1, now Sec. 193.021, it was provided that the assessors should assess "all the real and personal property in * * * such a manner as to secure a just valuation as required by § 1, Art. IX of the state constitution" and that "[i]n arriving at a just valuation" there should be taken into consideration seven factors: the present cash value of the property; its present use and the highest and best use to which it might be put in the near future; its location, size or quantity; the cost of the property and the present replacement value of improvements; the condition of the property; and the income it yields.
To repeat, the key words in the Constitutional provision are "just valuation" and in this regard the legislature was mandated to prescribe regulations that would produce a valuation of that character for tax purposes. Evidently the legislature did not get around to prescribing the considerations that were calculated to produce just valuation, until the enactment of Chapter 63-250 which is now Sec. 193.021, effective 1 January 1964, when the factors we have detailed were specified.
This litigation was commenced in June 1964 by complaint against the State Comptroller, the Duval County Tax Assessor, Tax Collector, and Board of County Commissioners charging systematic illegal assessment procedure by the assessor and seeking a decree that the terms "just value" and "fair market value" were synonymous, and declaring that any assessment at other than 100 per cent. of fair market value was illegal.
In the Assessor's Answer he denied the allegation that he had intentionally assessed property at a percentage of "just value" or "fair market value." Thus it appears at this point that the pleaders were attempting to use the terms "just value" and "fair market value" interchangeably.
In the Constitution, the acts, and the decisions dealing with the subject appear many terms, to which we have already alluded, for instance, "just valuation" the key designation, also "just value," "full cash value," "fair market value," "true cash value," "real value," "cash value," "true value" and "market value" to name a few.
A discussion of the quoted terms and an effort to differentiate among them would, we now think, be an academic excursion into semantics or a floundering in various definitions of dimly shaded meanings, but a comparison of the earlier Chapter 193, dealing generally with taxation, and the newer Chapter 193, on the subject leads to the conclusion that the effort is no longer justified or required. In the first act we find the expressions "real value," "full cash value," "true value," "true cash value," and "assessed value." With one exception, the first four of these have been eliminated in the later law. We note that in Sec. 193.14 the term "true cash value" was retained, whether by oversight or intention we do not know, and will not speculate. In the later act are references to "assessed value" but this term is modified by Sec. 193.021 and from the whole pattern that appears despite the exception we gather that there was a positive attempt to simplify the language and relate the whole subject to Sec. 193.021 as well as Sec. 1, Art. IX where the descriptions are identical, namely, "just valuation."
Before the passage of the act, now 193.021, fixing criteria for determining just *84 valuation which had since the adoption of the Constitution been the standard for computation of taxes, the legislature had adopted the yardstick "full cash value." Definition of the term was difficult as we often remarked. Schleman v. Connecticut Gen. Life Ins. Co., 151 Fla. 96, 9 So.2d 197; Osborn v. Yeager, 155 So.2d 742 (Fla. App.2d 1963); State ex rel. Glynn v. McNayr, Fla., 133 So.2d 312.
We understand that by the expressions in these cases the courts were not reluctant to decide the validity of the taxes involved but were meeting difficulty in establishing an absolute test, observing however, the consideration which should be afforded the assessor's discretion in the performance of his duties.
It is contended by the appellants in their brief that if the chancellor's decree be upheld "just valuation" can mean only "fair market value," that the adoption of any other gauge would contravene the Constitution and that the mandate to the legislature to prescribe regulations to produce a just valuation thus would become insignificant. We think not.
As used in the Constitution and the implementing statutes valuation is the act of arriving at the real worth, or so it seems to us from a study of the Constitution, statutes and decisions. If this idea be sound, and we think it is, then the seven factors prescribed by the legislature are more easily understood for in approaching the correct basis for determining the tax burden, that is, the amount of "X", the assessor shall on his journey take each factor into consideration.
Before going further, and mayhap compounding the confusion, we advert to the chancellor's exhaustive and erudite decree. We agree with some of it; with some of it we disagree.
As a preface to our analysis of the decree, we comment that the chancellor was dealing with a record of astronomical proportions. Over 1000 pages of testimony appear in the record. The arguments consumed six days. The briefs were many. From this voluminous record he distilled a decree that we think, in the main, properly settled the controversy.
At the outset he held directly that the suit was a proper one for declaratory decree. This aspect was challenged by the appellants here but we will not labor the point because it is plain to us that any owner of property in Duval County would in the situation reflected in this record entertain genuine doubt about his rights in the premises so we concur with the chancellor in his view that the procedure was quite proper.
The next feature of the decree was a declaration of the power of the court to enforce its own decree and to that position we do not take exception, but we do not accept the intimation that if there is failure to obey the decree, the court may appoint someone under authority of Appellate Rule 3.15, 31 F.S.A., to effectuate the decree, which in this case would be to perform the duties of the Tax Assessor. We do not acquiesce in such procedure and we do not need to elaborate the point. The chancellor has abundant power to put his decree into effect and, anyway, he indicates that his views are somewhat premature. We agree that they are but we refer to the problem so as not to hold out any hope that one appointed under the rule could possess and exercise the duties of the Constitutional office of Tax Assessor.
We now reach in our examination of the decree the crucial point in this controversy, i.e., the nature and effect of the defective assessment in the 1964 roll which will permeate and contaminate the successor role of 1965 if the system prevailing in former years is not terminated.
The chancellor found, and had reason to find, that real property was assessed at approximately 40 per cent. of its value "regardless of the legal phrase used to define that term."
*85 There is no use to reiterate what was long since decided by this court that valuations less than 100%X cannot be tolerated even though uniformly applied for the reason that the amount of the homestead exemption not being fluctuant a lower than 100%X assessment redounds to the unfair advantage of homestead over non-homestead property. Schleman v. Connecticut Gen. Life Ins. Co., 9 So.2d 197. This case was decided in 1942 and has been repeatedly followed in the intervening years. As late as 1957 in Blumberg v. Petteway, Fla., 91 So.2d 297, the principle was reiterated.
By the same token a systematic assessment at more than 100%X would result in unfairness to homestead property and an advantage to non-homestead property. In other words assessment at more or less than 100%X would not accomplish "just" valuation.
The enormousness of circumvention of the command of the Constitution in the assessment of property in Duval County is plain from the figures in the final decree. There were more than 96,000 homestead exemptions in 1964 and 51,000 of these were wholly exempt from taxation.
We pause here to say that condemnation of the suspect roll of 1964 does not necessarily amount to excoriation of the Appellant-Tax Assessor, Ralph N. Walter. The chancellor found that he was the first in that position since 1941 to obtain the necessary funds to institute a program of re-evaluation and reassessment.
The allegations of the complaint were that property was deliberately, systematically and intentionally being assessed at an average of 41.64 per cent. The Assessor denies this and although the record discloses that he had embarked on a plan systematically to prepare a proper roll for 1966 avoiding, no doubt, the deficiencies in the 1964 roll, it does show that the deficiencies were to be projected into the roll for 1965 continuing a system he had inherited. We affirm the finding of the chancellor that the 1964 roll should be condemned and that the standards followed in preparing it were "improper, unfair, unjust, discriminatory" and arbitrary and, of course, it was high time for the chancellor to halt such procedure before the 1965 roll became infected.
We are convinced the time has come to end the confusion and to set a standard by which "X" can be determined as accurately as may be considering the inexactitude of the English language and the vast disparity in the opinions of qualified conscientious witnesses. Schleman v. Connecticut Gen. Life Ins. Co., supra.
We agree with the chancellor's view that Sec. 193.021 was not intended to give assessors an almost unbridled discretion in the performance of their duty to establish just valuation. Rather, we regard the Act as an attempt by the legislature to pin the assessors more firmly to the Constitutional mandate. The result of such a construction is not to deprive these officers completely of their discretion for there is bound to be some tolerance in the execution of their task as they receive, weigh and evaluate varying information on the subject from different sources they consider reliable, but this opinion is designed to put at rest the procedure of setting assessable values at a percentage of "X". It is apodictic that a percentage of "X" cannot be computed without first establishing "X" and the assessors upon reaching the first figure are enjoined not to proceed to the second.
We have said much about "X", the unknown quantity, and nothing about how to set it within the bounds prescribed by the legislature in Sec. 193.021. The more we ponder the problem the more difficult the solution appears. But settle it we must and we have concluded after earnest study that the sensible way to do so is to adopt the chancellor's idea that "fair market value" and "just valuation" should be declared "legally synonymous" and that such is the *86 best way to arrive at the definition of "X". The former term is a familiar one and it, in turn, may be established by the classic formula that it is the amount a "purchaser willing but not obliged to buy, would pay to one willing but not obliged to sell." Root v. Wood, 155 Fla. 613, 21 So.2d 133.
If assessors will apply that test and in doing so observe the seven guideposts in Sec. 193.021, justness should be secured to the taxpayer and the tangle that has developed should be unraveled.
We agree that re-evaluation and reassessment should immediately be accomplished to insulate the 1965 roll from the imperfections of the roll for 1964, but we do not approve the suggestion of the court that as an alternative to a new roll based upon re-evaluation and reassessment the Assessor might be mandated simply to double assessments on the preceding roll. That procedure would result in untold confusion and would amount to multiplying the errors which plainly exist. A hearing with reference to such procedure would be unavailing.
We feel that the court erred when it did not dismiss the Tax Collector for we are not aware of any reason for continuing him as a party to the suit.
Affirmed in part and reversed in part with directions to enter a decree conforming to the view expressed in this opinion.
DREW, C.J., and O'CONNELL, J., concur.
ROBERTS, J., concurs specially with opinion.
CALDWELL, ERVIN and HOBSON (Retired), JJ., concur specially and agree with ROBERTS, J.
ROBERTS, Justice (concurring specially).
I agree to the opinion and judgment. However, I would go further and include a recognition for the reasonable classification of property by the Legislature for tax purposes as evidenced by the majority opinion in Lanier v. Overstreet, Fla., 175 So.2d 521, and the majority opinion in Markham v. Blount, Fla., 175 So.2d 526 (both this day filed) and the cases therein cited.
CALDWELL, ERVIN and HOBSON (Retired), JJ., concur.